CARL H. LEGG, *Adm'r., etc. v.* ROBERT RICHARD JONES

(No. 9555)

Submitted April 5, 1944. Decided May 2, 1944.

KENNA, JUDGE, absent.

*R. J. Thrift, Jr.,* and *Lilly & Lilly,* for plaintiff in error.
*Mahan, Bacon & White,* for defendant in error.

LOVINS, JUDGE:

Carl H. Legg, as administrator of the estate of Ottie Legg, prosecutes this writ of error to a judgment in his favor for one thousand dollars, rendered by the Circuit Court of Fayette County on a verdict for that amount returned in an action to recover damages for the death of his decedent.

The verdict, found on disputed facts, determined defendant's liability, and renders unnecessary a detailed factual statement. The deceased, a second year high school student sixteen years of age, was in good health, and his life expectancy was approximately forty-four years. In the early morning he delivered newspapers by bicycle, from which enterprise he earned about thirty-five dollars a month. On January 2, 1942, at 6:30 a. m., while riding his bicycle on a public highway, he was struck and killed by an automobile driven by defendant.

At the trial plaintiff was represented by R. J. Thrift, Jr. and the firm of Lilly and Lilly. The defendant was represented by the firm of Mahan, Bacon and White, the last-named acting alone for his firm at the trial, except as to selecting the jury.

Fred Fisher, a juror whose misconduct is here asserted, resided at Winona, about ten miles distant from Fayetteville where the trial was had. The juror's wife is a third cousin and girlhood friend of the wife of F. N. Bacon, a member of the firm representing defendant.

Prior to the trial, R. J. Thrift, Jr., one of plaintiff's counsel, made inquiry of A. H. Buchanan, a resident of Winona, if Fisher was undesirable as a juror in this case, or if Fisher had any connection with the firm representing the defendant which might influence him as a juror. Buchanan's response was negative. On the morning of the trial, Fisher and his wife drove to Fayetteville. Mrs.

Fisher went to the Bacon home, and was admitted thereto by F. N. Bacon. Fisher did not then go into the Bacon home. When court convened there were present, among others, plaintiff's counsel, White of counsel for defendant, and Fisher. Later Bacon was called to the court house to assist White in selecting the jury. It appears that Fisher was not acquainted with White; that he knew White's surname but was not apprised of the fact that he was a partner in the firm of Mahan, Bacon and White, although Fisher was aware of the existence of such firm. Fisher was called as a member of the panel of the instant case, and he, together with other prospective jurors, was questioned as to whether there was any relationship between them and counsel for plaintiff and defendant, who had been previously identified. No member of the jury responded to such question. A jury was then selected. Messrs. Bacon and White entered a room adjoining the court room, where Bacon assisted White in selecting a jury. As soon as the jury was selected Bacon departed and did not again appear in the court room during the trial, nor did he while there address himself to the jury panel.

Fisher had his noon and evening meals at a restaurant, but his wife had her meals at the Bacon home. The hearing of the case was recessed from 5:30 p. m. until 7:00 p. m., during which recess Fisher went to the Bacon home where he informed his wife and Mrs. Bacon that the trial had not been completed, and that he was required to attend a night session. Mrs. Bacon urged the Fishers to remain overnight at her home, and it was tentatively understood that if the court proceedings lasted until a late hour the Fishers would stay overnight at the Bacon home. Fisher, while on his way to the court house, stopped to talk with Bacon, who was working in the garden. In the course of the conversation Bacon asked if the trial had been completed, and, upon being informed that it had not, uttered the expression, "Oh!". Other conversation between them was about matters not relevant to this

case. Mrs. Fisher, desiring to inform her father of her intention to spend the night at the Bacon home, caused Mrs. Bacon to telephone the wife of A. H. Buchanan at Winona, and request Mrs. Buchanan to convey the information to Mrs. Fisher's father that the Fishers would not be home that night. Buchanan was present when his wife received the telephone call; was told by his wife the purport of the conversation; and thereafter Buchanan telephoned Thrift, of counsel for plaintiff, about 7:00 o'clock p. m., and informed him that Fisher was spending the night at the Bacon home. When court reconvened, arguments of counsel were concluded, and the case submitted to the jury about 8:30 o'clock p. m. Shortly after that time Thrift informed his co-counsel and plaintiff as to the information he had received from Buchanan. The alleged misconduct of the juror was not called to the court's attention prior to the return of the verdict. Plaintiff's counsel now assert that they did not do so because of the fact that they wished to verify the same. The verdict was returned about 10:00 o'clock p. m. Plaintiff's counsel made a motion for a new trial on grounds to be later assigned. After court adjourned Fisher went to the Bacon home, spent the night and had breakfast there the following morning. He did not see his host on the night the verdict was returned, but did see him at breakfast on the following morning, at which time Bacon learned of the verdict. Three months after return of the verdict, plaintiff filed a petition in the trial court setting up the facts hereinabove stated with reference to the alleged misconduct of the juror, to which petition defendant made answer, which latter pleading, in substance, denied any intention of wrong-doing or misconduct on the part of any persons involved therein. Testimony was taken in support of the petition and answer, and thereafter plaintiff assigned grounds in support of his motion to set aside the verdict. The trial court overruled the motion and entered judgment on the verdict.

Plaintiff contends that the verdict should be set aside for the following reasons: (1) The court erred in giving, over objection of the plaintiff, five instructions requested by the defendant; (2) the verdict of the jury is so inadequate as to show bias, fraud, partiality, corruption and prejudice; and (3) the verdict should have been set aside because of the misconduct of a juror (erroneously referred to in brief and petition as the disqualification and incompetency of a juror).

In this action two basic questions were presented to the jury: Is defendant liable to plaintiff? If so, in what amount? The five instructions given at the request of defendant over plaintiff's objection, related solely to the first question. No reference was made therein to the amount the plaintiff was entitled to recover. Assuming for purposes of discussion that one or more of the instructions stated an incorrect proposition of law and that the same should not have been given, the plaintiff's right to recover and the consequent liability of defendant were fixed by the verdict now attacked. Wherein is the plaintiff prejudiced by such instructions? It is argued that the erroneous instructions cast doubt on the right of recovery of the plaintiff and may have caused the jury to reduce the amount found in its verdict. This argument is plausible but speculative.

There may have been one or many reasons for the jury's finding. We do not know and may only speculate what effect, if any, the instructions had on the amount of the verdict. But it is a logical conclusion that since no mention is made in the instructions as to the amount of recovery that the jury in fixing the same was not misled thereby, and hence the error, if any, in giving them, was without prejudice. It is firmly established in this jurisdiction that the giving, over objection, of erroneous instructions relating only to the right of recovery, as distinguished from the amount thereof results in no prejudicial error, where the objecting party has a verdict, and such verdict will not be set aside because of such instructions. *Holt* v.

*Elevator Co.,* 78 W. Va. 785, 790, 90 S. E. 333; *Keesee* v. *Greyhound Corp.,* 120 W. Va. 201, 197 S. E. 522.

The ruling of the trial court in giving the five instructions at defendant's request may have been erroneous but the prejudice to plaintiff was eliminated by the verdict in his favor, and constitutes no ground for setting it aside.

In actions to recover for death by wrongful act, neglect, or default under the statute, it is the peculiar right, as well as the duty, of the jury to fix the amount of recovery. The right is conferred and the duty imposed by the statute which gives the right of action. "* * * In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars, * * *". Code, 55-7-6.

The authority of the jury to determine the amount of recovery in such cases is absolute and a verdict will not be set aside unless it appears "that the jury was actuated by passion, prejudice or corruption." *Hawkins* v. *Coal & Coke Co.,* 66 W. Va. 415, 66 S. E. 520; *Holt* v. *Elevator Co., supra; Keesee* v. *Greyhound Corp., supra.* The jury had the right to find any amount not in excess of the statutory maximum. No specific rules exist for measuring damages caused by the destruction of human life, except that recovery may not exceed ten thousand dollars, which is the only limitation found in the statute on the power of the jury. This is a case where the amount of the recovery is indefinite. There is no specific rule of law providing for the amount thereof, and the finding of the jury as to amount is conclusive, unless the jury was misled, or was moved by passion, partiality, corruption or prejudice. *Trice* v. *Chesapeake & Ohio Ry Co.,* 40 W. Va. 271, 21 S. E. 1022; *Thomas* v. *Electrical Co.,* 54 W. Va. 395, 46 S. E. 217; *Goshorn* v. *Foundry Company,* 65 W. Va. 250, 64 S. E. 22; *Floyd* v. *Railway Co.,* 112 W. Va. 66, 164 S. E. 28. As hereinabove indicated the jury was not instructed relative to amount of recovery, and, therefore, was not misled, nor is there any evidence herein showing that the

jury was motivated by passion, partiality, prejudice or corruption in finding the verdict.

We are mindful of decedent's long expectancy of life, his earning capacity of thirty-five dollars a month, and the fact that he was apparently an industrious and energetic youth. These were elements of damage which were submitted to the jury, and we find no evidence of improper motives which could have influenced the jury in fixing the amount of the verdict at one thousand dollars. The meagerness of the verdict alone is not a sufficient reason to set it aside. *Hawkins* v. *Coal & Coke Co., supra.*

The inevitable result of misconduct on the part of a juror is to cast suspicion on the impartiality of the verdict rendered by a jury of which he is a member. Few instances of such conduct have been called to the attention of this Court. Misconduct of jurors in drinking liquor with an interested party at a saloon has been emphatically condemned. *Pickens* v. *Boom Company,* 58 W. Va. 11, 18, 50 S. E. 872. Transportation of a juror between his home and the county seat by an interested attorney during a trial is the basis of an admonition to attorneys and jurors to refrain from such conduct. *Mullens* v. *Lilly,* 123 W. Va. 182, 13 S. E. 2d 634. If an interested attorney or a party to pending litigation furnishes food and lodging to a juror who, at the time thereof, is engaged in the trial of an action in which the attorney or the party is interested, both are guilty of misconduct, and a favorable verdict should not be received or sustained. 39 Am. Jur., Title New Trial, Section 97, 55 A. L. R. 756, note. See *Griffin* v. *Tomlinson,* 155 Va. 150, 154 S. E. 483, wherein the rule stated above is applied to the report of commissioners in a condemnation proceeding.

Upon a clear and satisfactory showing of misconduct by a juror induced, or participated in, by an interested party, no proof is required that the misconduct resulted in prejudice to the complaining party. Prejudice is presumed and unless rebutted by proof the verdict will be set aside. *Flesher* v. *Hale,* 22 W. Va. 44. But where such

misconduct is induced by a stranger, or a person having no interest in the litigation, unless manifestly prejudicial, the effect thereof must be established by proof.

It does not appear that the defendant was personally concerned in the misconduct charged to Fisher, the juror. All that is shown is the the juror's wife was entertained at the home of one of the defendant's attorneys; that before rendition of the verdict, Fisher tentatively accepted an invitation given by the wife of the attorney to spend the night at the attorney's home; and that after the verdict was returned, he availed himself of that invitation. The attorney was placed in an embarrassing position, in that he could not request the wife of the juror to go elsewhere, nor could he countermand the invitation given by his wife without violating the rules of courtesy and hospitality. We do not think that he is subject to serious criticism for the above-mentioned reasons. Nevertheless, the invitation to the juror to spend the night given by the wife of the attorney and accepted tentatively by the juror before rendition of the verdict, and thereafter unconditionally accepted, is sufficient ground upon which to direct a mistrial or to set aside the verdict after its rendition, had the matter been promptly called to the attention of the trial court.

One of plaintiff's attorneys knew or had reason to believe that Fisher intended to lodge in the Bacon home after he had completed his duties as juror, which knowledge was imparted about three hours before the verdict was returned. "The knowledge of the attorney in such case is the knowledge of his client." *Flesher* v. *Hale, supra.* The attorneys had sufficient time before the verdict was returned to apprise the trial court of Fisher's conduct, but did not do so. Can a new trial be granted because of the misconduct of a juror when the complaining party knew of the facts relating thereto, and had time and opportunity to make objections? We think not. The applicable rule is stated in the case of *Flesher* v. *Hale, supra,* the pertinent portion of the opinion reading as follows: "All the au-

thorities agree that, where a new trial is asked on account of irregularity or misconduct of the jury, it must appear that the party so asking called the attention of the court to it as soon as it was first discovered or as soon thereafter as the course of the proceedings would permit, and if he fail or neglect to do so, he will be held to have consented [or] to have waived all objections to such irregularity or misconduct, and, unless it be a matter which could not have been waived, or which could not have been remedied or obviated, if attention had been called to it at the time it was first discovered, he will be estopped from urging it as a ground for a new trial." See the numerous cases cited in *Flesher* v. *Hale, supra.* See also, *Webb* v. *Big Kan. & O. R. Packet Co.,* 43 W. Va. 800, 816, 29 S. E. 519; *Chapman* v. *Beltz & Sons Co.,* 48 W. Va. 1, 23, 35 S. E. 1013; *State* v. *Mooney and Friday,* 49 W. Va. 712, 720, 39 S. E. 657, wherein the rule above stated in the case of *Flesher* v. *Hale, supra,* is reiterated and approved. Indeed, this seems to be a rule of general application. *Brooks* v. *Camak,* 130 Ga. 213, 60 S. E. 456; *Miller* v. *Pace,* 71 Fla. 274, 71 So. 276; *Hannah* v. *Hannah,* 96 Vt. 469, 120 A. 886; *Peterson* v. *Skjelver,* 43 Neb. 663, 62 N. W. 43; *Hopkins* v. *Copalis Lumber Co.,* 97 Wash. 119, 165 P. 1062. We have been shown no authority enunciating a principle contrary to that above stated.

The rationale of this rule is that a party will not be permitted to remain silent hoping for a satisfactory verdict from the jury, and then complain when he is disappointed therein. It was the plaintiff's duty to inform the court of the conduct of the juror as promptly as the proceedings would permit. The record herein shows that the plaintiff neglected to give the court information relative to Fisher's conduct until after the jury was discharged. Whatever rights plaintiff may have had to object to the conduct of the juror he lost by his failure to call it to the attention of the court before the verdict.

The misconduct of the juror not having been called to the attention of the trial court at the proper time, such

conduct cannot now be considered as a ground for setting aside the verdict, and the judgment of the Circuit Court of Fayette County is therefore affirmed.

*Affirmed.*